IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


DONA JONES                                                          PLAINTIFF


     v.                              CIVIL NO. 21-3058


KILOLO KIJAKAZI, Acting Commissioner
Social Security Administration                                      DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Dona Jones, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on September 4, 2018, alleging an inability to work since July 4, 2015,[1] due to two heart attacks, trouble breathing, fatigue, a thyroid condition, asthma, sinus tachycardia and anxiety. (Tr. 115, 265, 282). For DIB purposes, Plaintiff maintained insured status through September 30, 2018. (Tr. 10, 309). An

---

[1] Plaintiff, through her counsel, amended her alleged onset date to July 4, 2018 (Tr. 9, 61).

administrative telephonic hearing was held on July 15, 2020, at which Plaintiff appeared with counsel and testified. (Tr. 33-89).

By written decision dated November 20, 2020, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). Specifically, the ALJ found Plaintiff had the following severe impairments: s/p remote myocardial infarction with PTCA, coronary artery disease without angina pectoris, lumbar spondylosis with radiculopathy, CREST syndrome, and anxiety disorder/panic disorder without agoraphobia. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr.13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolding, and can only occasionally stoop, crouch, bend, kneel, crawl, and balance. She can occasionally use the left lower extremity for foot controls and pedals. The work must be unskilled, limited to simple, routine, and repetitive tasks, with supervision that is simple, direct, and concrete, and only occasional interaction with coworkers, supervisors, and the public.

(Tr. 15). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a small products assembly worker and a screwdriver operator. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, who denied that request on May 26, 2021. (Tr. 1-5). Subsequently, Plaintiff filed this action. (ECF No. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.     Evidence Presented:

At the telephonic administrative hearing held before the ALJ on July 15, 2020, Plaintiff testified that she was fifty-one years of age and obtained a high school education. (Tr. 60).  A review of the record revealed Plaintiff's past relevant work consists of work as a secretary and a receptionist. (Tr. 85).

The pertinent medical evidence for the time period in question reflects the following: On August 6, 2018, Plaintiff presented to the emergency room complaining of intermittent chest pain. (Tr. 453-491). Dr. Stephen Karman noted Plaintiff's chest pain was considered stable, but treatment was deferred to cardiology. Plaintiff was later seen by Dr. Robbie T. Mangalasseril for a cardiac consultation. Plaintiff reported she had experienced an increase in her shortness of breath and fatigue while at the grocery store the previous day. When she was driving home from the store, she felt increased chest pressure that radiated into her left arm. Plaintiff reported that she took nitroglycerin which helped the pain but did not relieve it completely. Dr. Mangalasseril noted a CT angiogram of the chest showed no pulmonary embolus but did show a hiatal hernia. Chest x-rays revealed no acute cardiopulmonary disease. Dr. Mangalasseril noted Plaintiff was intolerant of numerous medications, but she was able to take a low dose of atenolol. Plaintiff complained of fatigue and shortness of breath but denied back pain, joint pain, anxiety or depression. Treatment notes indicated Plaintiff was able to perform all activities of daily living independently. Upon examination, Dr. Mangalasseril noted Plaintiff was alert and oriented and in no acute distress. Plaintiff's lungs were clear to auscultation and respirations were non-labored. Plaintiff's heart had normal rate and regular rhythm. A musculoskeletal exam revealed normal range of motion, normal strength, and no tenderness or swelling. Plaintiff was found to be cooperative and with an appropriate mood and affect. Plaintiff was diagnosed with atypical chest pain, a history of coronary

3

artery disease, a hiatal hernia and dyslipidemia. Dr. Mangalasseril noted Plaintiff's presentation was atypical for significant coronary artery disease and opined she could have esophageal spasm, a hiatal hernia, gastritis, or GERD. Plaintiff was prescribed medication and notes indicated Plaintiff would be referred to gastroenterology if her symptoms failed to improve.

On August 15, 2018, Plaintiff was seen by Jeremy L. Berbereia, PA. (Tr. 573-575). Plaintiff reported experiencing medication side effects, to include fatigue and tiredness, with the use of atenolol. Plaintiff reported the pravastatin caused muscle aches and pains. Plaintiff indicated improvement in her chest pain with Protonix and a diet change. Plaintiff reported shortness of breath, fatigue and edema. Plaintiff indicted she was able to perform all activities of daily living independently.  Upon examination, PA Berbereia noted Plaintiff's heart had a regular rate and rhythm with no lift, heave or thrill. Plaintiff had no edema, and her lungs were clear to auscultation, bilaterally. Plaintiff had normal abdominal, musculoskeletal, and neurologic findings. PA Berbereia opined Plaintiff had atypical chest pain most likely secondary to GERD, GI, or reflux as it improved with Protonix and diet changes. Plaintiff agreed to undergo PFT testing for her shortness of breath. Plaintiff was to return in six months for a follow-up.

On August 17, 2018, Plaintiff was seen by Dr. Leonard Bridges for right and left upper quadrant discomfort and dyspepsia. (Tr. 522-524). Dr. Bridges noted Plaintiff was recently hospitalized and underwent a CT/angio of the chest which ruled out pulmonary embolus. Upon examination, Plaintiff was found to be well-appearing with a normal mood and affect. Plaintiff's heart exhibited a regular rate and rhythm with no murmur or gallop. Plaintiff's lungs were clear and she had strong and equal breath sounds bilaterally. Plaintiff's abdomen was non-tender. A back exam revealed decreased lumbar lordosis. Dr. Bridges observed that Plaintiff walked with excess forward trunk flexion. Dr. Bridges observed no edema in Plaintiff's extremities. Plaintiff

was assessed with right upper quadrant pain, left upper quadrant pain, dyspepsia, atherosclerotic heart disease of the native coronary artery without angina pectoris, and hypothyroidism. Plaintiff was prescribed medication and asked to return in one month.

On August 30, 2018, Plaintiff underwent pulmonary function testing that indicated no significant abnormalities. (Tr. 448-450, 654).

On February 25, 2019, Plaintiff was seen for a six-month follow-up appointment with PA Berbereia. (Tr. 438-440). Plaintiff indicated that she continued to have heart palpitations and had also noticed shortness of breath and chest pain since August but felt it could be due to the hernia. Plaintiff reported overall she had been doing okay but indicated that she had been stressed out secondary to her son. Plaintiff reported issues with her hiatal hernia causing some increased pressure in her epigastric and chest area. Plaintiff had been off her Protonix for a while but had restarted the medication and her symptoms were still present but improved. Plaintiff indicated that she wanted to speak to a general surgeon about her hiatal hernia. Upon examination, PA Berbereia noted Plaintiff's heart had a regular rate and rhythm; her lungs were clear to auscultation, bilaterally; and her abdomen was soft and nontender. PA Berbereia noted Plaintiff had no edema. Plaintiff exhibited a steady gait and was alert and oriented with no depression or anxiety. Plaintiff reported she was able to perform activities of daily living independently. Plaintiff was prescribed medication, instructed to monitor her blood pressure at home, and referred to general surgery for a hernia consult.

On March 26, 2019, Dr. William Harrison, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as

shown for lift and/or carry; and that postural, manipulative, visual, communicative and environmental limitations were not evident. (Tr. 124-125). On September 6, 2019, after reviewing the records, Dr. Jeremy Saul affirmed Dr. Harrison's opinion. (Tr. 162-163).

On April 19, 2019, Plaintiff was seen by Dr. Thomas Brent Rosson, Jr. for medication refills and a referral to Dr. James Langston for a hiatal hernia. (Tr. 593-596). Dr. Rosson noted Plaintiff's hiatal hernia was stable. A review of systems revealed Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was in no acute distress, that her heart had a regular rate and rhythm, and that her lungs were clear to auscultation bilaterally, with normal respiratory effort and no wheezes or crackles. Plaintiff was noted as alert and oriented with a normal mood. Dr. Rosson assessed Plaintiff with acquired hypothyroidism, a hiatal hernia, and coronary artery disease without angina pectoris. Plaintiff's medications were refilled, and Plaintiff was referred to Dr. Langston for an evaluation of her hiatal hernia. Plaintiff was to return in three months.

On May 7, 2019, Plaintiff was seen by Dr. Langston for an evaluation for an esophagogastroduodenoscopy. (Tr. 622-623, 641). Dr. Langston noted Plaintiff's most recent heart catheterization in November of 2017 did not show any significant coronary artery disease. Plaintiff was noted to have a syndrome of heartburn with occasional water brash and aspiration syndrome. Dr. Langston noted Plaintiff did pretty well on Protonix but if she missed a dose, she was more likely to have a reflux episode. Plaintiff also reported sudden shortness of breath that at times woke her. Plaintiff denied fatigue or chest pain, Dr. Langston noted a hiatal hernia was identified on a CT pulmonary angiogram. Upon examination, Dr. Langston noted Plaintiff's vitals were within normal limits; her heart had a regular rate and rhythm; her lungs were clear to auscultation, bilaterally; and her abdomen was soft, nontender and nondistended. Plaintiff was able to stand and

walk without assistance and no signs of impaired coordination were observed. Dr. Langston assessed Plaintiff with gastroesophageal reflux disease and an endoscopy was recommended.

On May 13, 2019, Plaintiff was seen by Dr. Samuel B. Hester for a consultative mental diagnostic evaluation. (Tr. 598-604). Plaintiff reported no treatment by a mental health professional but indicated her primary care physician had treated her for a panic disorder. Plaintiff reported she took Zoloft for fifteen years but stopped taking it the previous year. Plaintiff indicated she took Xanax on an as needed basis. Dr. Hester noted Plaintiff's report of sadness about living with heart disease and feeling fatigue but opined this to be situational anxiety. Dr. Hester diagnosed Plaintiff with a panic disorder without agoraphobia by history and a pain disorder, sciatica, and chest pain. With respect to adaptive functioning, Dr. Hester noted Plaintiff was able to drive unfamiliar routes, perform most activities of daily living autonomously, and to shop and pay bills. Dr. Hester opined Plaintiff had the ability to communicate and interact in a socially adequate manner; to cope with the mental demands of basic work tasks unless fatigue or pain issues interfered; to attend to and sustain concertation on basic tasks; and to sustain persistence in completing tasks. Dr. Hester further opined Plaintiff may not be able to complete tasks within an acceptable timeframe due to both pain and fatigue issues.

On May 15, 2019, Dr. Graham Reid a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 125-128). On the same date, Dr. Reid completed a Psychiatric Review Technique form opining that Plaintiff had mild limitations with understanding, remembering, or applying information; moderate limitations with interacting with others; moderate limitations with concentrating, persisting or maintaining pace; and mild limitations with adapting or managing

oneself. (Tr. 121). On September 5, 2019, after reviewing the records, Dr. Marilyn Jordan affirmed Dr. Reid's opinion. (Tr. 160, 163-166).

On May 16, 2019, Plaintiff underwent an EGD that revealed diaphragmatic hernia without obstruction or gangrene and gastroesophageal reflux disease without esophagitis. (Tr. 627-628). The plan of treatment indicated Plaintiff was to continue with her present medications, and to follow-up as needed.

On July 8, 2019, Plaintiff was seen by Dr. Rosson to discuss hormone replacement therapy and to follow-up for her thyroid. (Tr. 631-632, 795-797). Plaintiff reported feeling down, depressed or hopeless on several days. Plaintiff complained of lower extremity swelling after riding a motorcycle. Plaintiff indicated she was tolerating her medication okay, but her menopause symptoms were worsening. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and her lungs were clear to auscultation bilaterally. Plaintiff was noted as alert and oriented with a normal mood. Plaintiff was prescribed medication and asked to return in two months.

On August 26, 2019, Plaintiff was seen by PA Berbereia for a six-month follow-up. (Tr. 651-655). Plaintiff reported she still had dyspnea on exertion and shortness of breath. Plaintiff also indicated she had occasional chest pain, numbness and tingling in her left hand and lower extremity edema. Plaintiff indicated she had been feeling well up until a couple of months ago. Plaintiff indicated she had felt weak for the last few weeks. Plaintiff underwent an EKG that showed sinus rhythm and a heart rate of eight-six beats per minute. Upon examination, Plaintiff was found to be alert, oriented and in no acute distress. Plaintiff's heart exhibited a regular rate and rhythm, and no vascular edema was observed. Plaintiff's lungs were clear to auscultation, bilaterally. Plaintiff

exhibited a steady gait and there was no indication of anxiety or depression. PA Berbereia indicated Plaintiff's chest pain, shortness of breath and fatigue were due to an unknown etiology but due to Plaintiff's history he recommended that Plaintiff undergo a nuclear medicine treadmill stress test and a 21-day cardiac event monitor. If no abnormalities were noted, it was recommended that Plaintiff see a neurologist for a pain management evaluation.

On September 9, 2019, Plaintiff was seen by Dr. Rosson for a thyroid check, and severe calf, foot and toe cramps. (Tr. 791-794). Plaintiff denied feeling down, depressed or hopeless. Dr. Rosson noted Plaintiff was seeing a cardiologist and was wearing a heart monitor during the appointment. Dr. Rosson indicated that Plaintiff's hypothyroidism was stable. Plaintiff complained of lower extremity cramping that was worsening. Dr. Rosson noted Plaintiff was back on magnesium. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and her lungs were clear to auscultation bilaterally. Plaintiff was noted as alert and oriented with a normal mood. Dr. Rosson assessed Plaintiff with acquired hypothyroidism, coronary artery disease and paresthesias. Dr. Rosson prescribed medication and ordered EMG studies.

On September 12, 2019, Plaintiff underwent EMG studies that revealed lumbo-sacral radiculopathy with mild chronic axon loss in the left lower lumbar paraspinals. (Tr. 696-697). The results were unremarkable for polyneuropathy or focal distal nerve lesions. (Tr. 696-697)

On September 20, 2019, Plaintiff was seen for a physical therapy evaluation due to back pain with muscle spasms and paresthesia. (Tr. 735-737). Plaintiff reported the pain was mainly on the left side but sometimes occurred on the right side. Plaintiff reported daily pain was a 10/10 but indicated her pain during the session was a 5/10. Plaintiff reported that she injured her back several

years ago but started having muscle spasms three months ago. Plaintiff stated her muscle spasms ran from her back all the way down the leg to the foot. After evaluating Plaintiff, Tonia Stoke, PT, DPT, recommended therapy twice a week for six weeks.

On September 23, 2019, Plaintiff attended a physical therapy session. (Tr. 738-739). Plaintiff complained of low back pain and rated her pain at a 5-6/10. Plaintiff denied pain down her lower extremity but indicated that pain was intermittent. Allie Curtis, PTA, noted Plaintiff's complaints of pain at the left low back following intermittent mechanical traction. Plaintiff sat on heat for five to ten minutes and denied pain down the left lower extremity upon leaving.

On September 26, 2019, Plaintiff attended a physical therapy session. (Tr. 740-741). Plaintiff reported after the last therapy session she was unable to stand up straight after traction. Plaintiff indicated she had not experienced pain while on traction but afterward her pain increased. Plaintiff reported her pain was a 5-6/10, and that she had a bad muscle cramp in her foot the previous day. PT Stokes noted Plaintiff tolerated heat and IFC, but traction was withheld. Core stabilization exercises were added to the session. Plaintiff reported her pain was a 6/10 after therapy.

On October 8, 2019, Plaintiff attended a physical therapy session. (Tr. 748-749). Plaintiff reported numbness down her left leg to her toes, and muscle cramping into both legs. PT Stokes noted Plaintiff had good tolerance to heat and IFC. An area of soft tissue thought to be a cyst of lipoma just proximal of the left SI joint was a source of pain. A similar area was noted on the right side but was not as painful. Plaintiff reported her legs felt tired after the exercises.

On October 10, 2019, Plaintiff was seen for a physical therapy session. (Tr. 750-751). Plaintiff reported she had been sore after her therapy sessions. PT Stokes noted Plaintiff's right leg

was longer than her left and that she had increased pronation of her ankles. It was recommended that Plaintiff try a heel lift in her left shoe and an orthotic to support the arches in her feet. Plaintiff had good tolerance to exercises but reported increased pain with muscle energy.

On October 14, 2019, Plaintiff was seen for a physical therapy session. (Tr. 752-753). Plaintiff reported she spent six hours in a car the previous day and that her back was sore. PT Stokes noted Plaintiff's report of increased pain in her left leg with exercises. Plaintiff was not able to complete all the reps with her hip on the left side due to pain. Pelvic balancing exercises were added, and Plaintiff tolerated 5 reps.

On October 17, 2019, Plaintiff was seen for a physical therapy session. (Tr. 754-755). Plaintiff reported lower back pain on the lower left side rated at an 8/10. Plaintiff indicated that therapy was not helping as she continued to have lower extremity cramping and pain and that she was sore for at least a day after each session. PT Stokes observed that Plaintiff was very unstable on the Thera ball and that she reported continued lower back pain.

On October 22, 2019, Plaintiff was seen for a physical therapy session. (Tr. 756-759). Plaintiff rated her pain as an 8-9/10. Plaintiff reported that she rode a motorcycle for one hour, took a break, and rode for one hour back. Plaintiff indicated that she had good days and bad days, but her pain was not any better. PT Stokes noted Plaintiff had good tolerance to heat and IFC. Plaintiff reported tenderness on the left lower lumbar and left SI joint with astym. Plaintiff exhibited decreased strength and trunk range of motion. PT Stokes noted Plaintiff was going to return to her physician due to continued low back pain and bilateral leg pain. Plaintiff was discharged from physical therapy on November 25, 2019. (Tr. 760).

On October 31, 2019, Plaintiff was seen by Dr. Prasert Vijitbenjaronk for a cardiac follow-up. (Tr. 656-658). Plaintiff reported that overall, she felt the same. Plaintiff indicated that she continued to have occasional chest pain, exertional shortness of breath, palpitations, and fatigue. Plaintiff denied dizziness or syncope and indicated she tolerated medication well. Plaintiff denied abdominal pain, muscle pain or muscle weakness. After examining Plaintiff, Dr. Vijitbenjaronk assessed Plaintiff with stable coronary artery disease, palpitation with no arrhythmia and shortness of breath of unknown etiology by her cardiac findings. Plaintiff was strongly encouraged to increase her level of exercise and to maintain a healthy diet.

On November 4, 2019, Plaintiff was seen by Dr. Rosson for a follow-up after completing physical therapy. (Tr. 789-790). Plaintiff reported her pain had not improved and that the range of motion in her back was worse. Plaintiff also reported an increase in her anxiety and requested a medication refill for Xanax. Dr. Rosson noted Plaintiff also complained of some cramping in her legs and feet. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and her lungs were clear to auscultation bilaterally. Plaintiff was noted as alert and oriented with a normal mood. Dr. Rosson assessed Plaintiff with anxiety and lumbar radiculopathy and prescribed medication. Dr. Rosson ordered a MRI of the lumbar spine based on EMG findings and failed physical therapy. Plaintiff was to return in three months.

On November 11, 2019, Plaintiff underwent a MRI of the lumbar spine that revealed the following:

> Multilevel lumbar spinal degenerative changes. No acute disk evident or nerve root compression seen to account for the patient's left hip symptoms. There is inflammation of the left L5/S1 facet joint with effusion and small amounts of periarticular soft tissue edema. No marrow edema. No canal or foraminal stenosis seen with the lumbar spine.

12

(Tr. 699)

On November 18, 2019, Plaintiff was seen by Dr. Rosson to discuss her MRI results and blood pressure. (Tr. 787-788). Dr. Rosson noted Plaintiff's MRI showed some inflammation in her lumbar spine and that Plaintiff indicated she was "still hurting." Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and her lungs were clear to auscultation bilaterally. Plaintiff was noted as alert and oriented with a normal mood. Dr. Rosson assessed Plaintiff with radicular pain of the lumbosacral region and started her on prednisone. Dr. Rosson also referred Plaintiff to pain management. Plaintiff was to follow up as needed.

On November 18, 2019, Dr. Rosson completed a medical source statement-physical. (Tr. 634-636). Dr. Rosson indicated Plaintiff had the following diagnoses: panic attacks, leg cramps, hypothyroidism, back pain, feet cramps, depression, paresthesia and coronary artery disease. Plaintiff's symptoms consisted of pain, leg cramps, fatigue and an unsteady balance. Dr. Rosson indicated the clinic findings and objective signs consisted of lumbar radiculopathy. Dr. Rosson noted Plaintiff's medication caused drowsiness. Dr. Rosson opined Plaintiff could perform less than sedentary work.

On the same date, Dr. Rosson also completed a medical source statement-mental. (Tr. 638-639). Dr. Rosson indicated Plaintiff had the following diagnoses: panic attacks and depression. Dr. Rosson indicated Plaintiff did not experience side effects from medication. Dr. Rosson opined Plaintiff would be "off task" more than twenty-five percent of the workday. Dr. Rosson indicated Plaintiff had moderate limitations in multiple areas of functioning and marked limitation with her ability to maintain attend and concentration for extended periods. Dr. Rosson indicated he based his findings on Plaintiff's medical history.

13

On December 9, 2019, Plaintiff was seen by Dr. Rosson for a three-month follow-up appointment. (Tr. 785-786). Plaintiff complained of feeling ill since Wednesday but was gradually feeling better. Plaintiff indicated she had been in contact with sick individuals the previous week. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and her lungs were clear to auscultation bilaterally. Plaintiff was noted as alert and oriented with a normal mood. Dr. Rosson assessed Plaintiff with viral gastroenteritis and hypothyroidism.

On December 27, 2019, Plaintiff was seen by Dr. Rosson for a rash under her arms. (Tr. 783-784). Plaintiff also inquired about the results of her TSH labs. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and she had no increased work of breathing. Dr. Rosson assessed her with a hypothyroid and tinea corporis. Plaintiff was prescribed medication and asked to return in three months.

On January 7, 2020, Plaintiff was seen by Dr Matthew Mcnelley to establish care. (Tr. 689-695). Plaintiff reported her back pain began in 2006 but worsened over the summer of 2019. Dr. Mcnelley noted Plaintiff's pain started over her low back and went down her left leg. Plaintiff also complained of cramping in both legs and feet, more on the left. Plaintiff indicated her pain was exacerbated with increased activity and temporarily improved with massage, exercise, rest, cold, ice, heat and medications. Dr. Mcnelley noted Plaintiff had recently been through physical therapy without improvement. Plaintiff reported mild improvement in pain with the use of Advil and Tylenol. Plaintiff indicated she was able to perform activities of daily living with pain medication. A review of systems revealed Plaintiff's complaints of fatigue, chest pain, palpitations, swelling in her hands/feet, shortness of breath, back pain, joint swelling, headache and weakness.  Plaintiff

also reported depression and feeling anxious. Upon examination, Dr. Mcnelley noted Plaintiff was alert and oriented and in no acute distress. Plaintiff exhibited a full active range of motion of the cervical spine with tenderness to palpation. A cardiovascular examination revealed her heart had a regular rate and rhythm and there was no evidence of pedal edema. Palpation of the lumbar facets reproduced back pain, but no pain was noted over the lumbar intervertebral spaces, bilateral sacroiliac joint area or greater trochanteric bursa. No palpable trigger points were noted over the low back. Plaintiff was found to have a normal mood and affect and intact memory. Dr. Mcnelley opined Plaintiff was able to heel and toe walk. Straight leg testing was positive on the left and negative on the right. Plaintiff had normal motor strength and sensation. Dr. Mcnelley assessed Plaintiff with chronic pain syndrome, L-S radiculopathy, other spondylosis and lumbar stenosis. Dr. Mcnelley recommended steroid injections, the first of which was administered on January 13, 2020. (Tr. 684-688).

On January 27, 2020, Plaintiff was seen by Dr. Mcnelley for a follow-up. (Tr. 679-683). Treatment notes indicated Plaintiff reported at least a fifty percent improvement in her pain and functionality for at least two to three weeks after the first injection. Given Plaintiff's positive response, Dr. Mcnelley administered a second injection.

On February 18, 2020, Plaintiff was by Dr. Mcnelley for her pain. (Tr. 672-678). Plaintiff reported the lumbar epidural steroid injections helped her back pain for about one day. Plaintiff noted that she did not like Tramadol, as she thought it caused constipation. Plaintiff reported increased pain that was barely controlled. Plaintiff denied side effects from medication but indicated some limited activity and enjoyment of life due to pain. Plaintiff indicated she was able to perform activities of daily living with pain medication. Plaintiff denied fatigue, shortness of breath, anxiety, or abdominal pain. Upon examination, Dr. Mcnelley noted Plaintiff exhibited full

active range of motion of the cervical spine; equal breath sounds, bilaterally; no evidence of pedal edema; tenderness to palpation of the cervical and lumbar spine; positive straight leg on the left and positive facet loading; no palpable trigger points; normal motor strength and sensation; intact recent memory; and normal mood and affect. Dr. Mcnelley's assessment indicated Plaintiff had a long history of back pain that had flared up over the last several months. Dr. Mcnelley prescribed medication and recommended a medial branch block that was administered on March 2, 2020. (Tr. 666-671).

On March 4, 2020, Plaintiff was seen by Dr. Rosson for a two-month follow-up for her hypothyroid. (Tr. 780-782).  Dr. Rosson also noted Plaintiff continued to have moderate to worsening ringworm on her abdomen. Treatment notes indicated Plaintiff's blood pressure had been higher after starting a new medication. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. Upon examination, Dr. Rosson noted Plaintiff was not in distress. Plaintiff's heart exhibited a regular rate and rhythm, and she had no increased work of breathing Dr. Rosson assessed acquired hypothyroidism, ringworm and fatigue, unspecified type. Plaintiff was to return in three months.

On May 13, 2020, Plaintiff was seen by Dr. Mcnelley for a follow-up. (Tr. 660-665). Treatment notes indicated Plaintiff experienced at least eighty percent pain relief with the previous block so a second one was administered.

On June 2, 2020, Plaintiff was seen by Dr. Mcnelley for a follow-up. (Tr. 799-805). Plaintiff reported that her pain was significantly improved for a short period of time after each lumbar medical branch block. Plaintiff reported some improvement with the use of Robaxin. Plaintiff indicated her pain was an 8/10. Dr. Mcnelley noted Plaintiff was able to perform activities of daily living with the use of pain medication. A review of systems indicated Plaintiff's report of

fatigue, undergoing depression and feeling anxious. Plaintiff denied shortness of breath, or difficulty breathing. After examining Plaintiff, Dr. Mcnelley noted Plaintiff was pleasant and returned with low back pain that improved with a lumbar median branch block for a short period of time. Dr. Mcnelley noted Plaintiff reported new right shoulder, neck and mid back pain. A facet medial branch nerve rhizotomy was recommended.

On June 2, 2020, Plaintiff also underwent cervical spine x-rays that revealed no subluxation on flexion or extension. (Tr. 842-844). A left shoulder x-ray revealed no acute fracture. A thoracic spine x-ray revealed no subluxation.

On June 4, 2020, Plaintiff was seen by Dr. Rosson for a three-month follow-up for her thyroid. (Tr. 701-702, 817-819). Plaintiff wanted to discuss Raynaud's disease, fatty tissue in her neck, and a hiatal hernia. Dr. Rosson noted Plaintiff's degenerative disc disease and hypothyroidism were stable. Dr. Rosson noted Plaintiff had possible Raynaud's disease and that Plaintiff reported that her hiatal hernia was worsening. Plaintiff also asked for a bump in her neck be checked. Plaintiff denied chest pain, shortness of breath, nausea or vomiting. After examining Plaintiff, Dr. Rosson assessed Plaintiff with acquired hypothyroidism, Raynaud's phenomenon without gangrene, a hiatal hernia and a lump in her neck. Dr. Rosson referred Plaintiff to a rheumatologist, prescribed medication and recommended a follow-up in six months.

On June 5, 2020, Plaintiff underwent an ultrasound of the neck that revealed no suspicious mass, fluid, or cyst within the left neck. (Tr. 814-816).

On July 9, 2020, a MRI of the cervical spine revealed mild cervical spondylosis worse at C6/C7 but no canal stenosis or neuroforaminal narrowing. (Tr. 879). No vertebral body compression fracture or subluxation was noted.

17

On August 26, 2020, Plaintiff was seen at the Mercy Berryville Rheumatology clinic by Dr. Ronald R. Rubio. (Tr. 893-904). Plaintiff reported for about one year, when her hands were cold, they would stiffen and tingle which made it hard to hold anything. Plaintiff underwent chest x-rays that revealed no active disease. Plaintiff was diagnosed with CREST syndrome and prescribed medication. Plaintiff was seen for a follow-up on October 7, 2020, and no changes were made to her medication. (Tr. 906).

### III.    Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits *de novo* to ensure that there was no legal error that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin,* 825 F. 3d 936, 939 (8th Cir. 2016). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Lawson v. Colvin*, 807 F.3d 962, 964 (8th Cir. 2015).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id*.

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental impairment that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

## IV.   Discussion:

Plaintiff argues the following issues on appeal: 1) The ALJ's decision is not based on substantial evidence because the ALJ minimized or mischaracterized the evidence; 2) The ALJ committed reversible error because he failed to properly evaluate the medical opinion evidence and relied on his own lay interpretation regarding the functional significance of diagnostic medical reports; and 3) The ALJ committed reversible error because he failed to find the Plaintiff's hiatal hernia to be a severe impairment at Step Two and failed to account for corresponding limitations

in Plaintiff's RFC.[2] (ECF No. 13). Defendant argues the ALJ properly considered all the evidence, and the decision is supported by substantial evidence. (ECF No. 14).

### A.  Insured Status and Relevant Time Periods:

To have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on September 30, 2018.  Regarding Plaintiff's application for DIB, the overarching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of July 4, 2018, her amended alleged onset date of disability, through September 30, 2018, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB, she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984) (explaining claimant has the burden of establishing the existence of a disability on or before the expiration of her insured status). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements); *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (explaining the ALJ need "only consider the applicant's medical condition as of his or her date last insured").

---

[2] The Court has re-ordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend. *See* 20 C.F.R. § 416.335.  Therefore, the relevant period is from September 4, 2018, the date Plaintiff protectively applied for SSI benefits, through November 20, 2020, the date of the ALJ's decision.

**B.     Step Two Determination**:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. *See* 20 C.F.R. § 404.1520(c).  While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. *See* Social Security Ruling 96-3p.  The claimant has the burden of proof of showing she suffers from a medically severe impairment at Step Two. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Plaintiff argues the ALJ erred in failing to find Plaintiff's hiatal hernia to be a severe impairment. In determining Plaintiff's severe impairments, the ALJ addressed several alleged impairments (hypertension, hypercholesterolemia, hypothyroidism, GERD, hernia, asthma and neck pain), but found the evidence supported a conclusion that these impairments would impose no more than a minimal effect on her ability to perform basic work activities. With respect to Plaintiff's alleged hernia, the ALJ noted a hiatal hernia was diagnosed in August of 2018 and was treated with medication and without surgery. Subsequent medical records failed to show Plaintiff consistently reported ongoing symptoms caused by her hernia and in fact most medical records show her hernia to be stable with the exception of occasional flares which at times occurred when she had not taken her medication. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000) (alleged

impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record). With respect to Plaintiff's alleged asthma and shortness of breath, the ALJ discussed the medical evidence that includes pulmonary function testing that showed no significant disease. The ALJ also pointed out Plaintiff consistently denied experiencing shortness of breath and respiratory examinations failed to reveal significant findings.

While the ALJ did not find every medical diagnosis to be a severe impairment, the ALJ specifically and thoroughly discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. *Parker v. Kijakazi*, No. 4:21-CV-00547-NCC, 2022 WL 3585610, at *4 (E.D. Mo. Aug. 22, 2022) (even if the ALJ erred in failing to find an alleged impairment severe, the error was harmless in light of the ALJ's consideration of the impairment in the RFC analysis). After reviewing the record as a whole, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

### C.     Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.* As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone

is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,*
314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and
evaluated Plaintiff's subjective complaints, including the *Polaski* factors.  As discussed in the
ALJ's decision, the record revealed that during the relevant time period, Plaintiff was able to take
care of her personal needs, to prepare simple meals, to shop for groceries and personal items, to
pay bills, to do household chores and to drive without accompaniment. Plaintiff routinely reported
to her medical providers that she was able to perform all activities of daily living independently
with pain medication.  In October of 2019, Plaintiff was "strongly encouraged" to increase her
level of exercise. While Plaintiff testified that she was constantly short of breath with any activity,
the ALJ pointed to the record that revealed Plaintiff consistently denied experiencing shortness of
breath to her treatment providers.

With respect to Plaintiff's alleged physical impairments, the medical evidence revealed
that during the time period in question, Plaintiff was treated conservatively and appeared to
experience some relief with the use of medication. *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir.
2009) (impairments that are controllable or amenable to treatment do not support a finding of
disability); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (finding conservative treatment and
no surgery consistent with discrediting claimant's testimony).

Plaintiff argues the ALJ improperly discounted Plaintiff's complaints of disabling back
pain, specifically that the ALJ noted Plaintiff's failure to return to physical therapy without also
explicitly stating that Plaintiff did not complete the physical therapy sessions due to her pain
worsening after sessions.  Plaintiff appears to argue the ALJ's characterization of Plaintiff's failed
physical therapy as a reason he discounted Plaintiff's allegation of a disabling back pain; however,

nowhere in the decision does the ALJ state that Plaintiff's failure to complete physical therapy was viewed as a basis for discounting her pain. An ALJ is not required to discuss every piece of evidence that was submitted and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383 at 386. Contrary to Plaintiff's objection, the ALJ did not ignore Plaintiff's allegation that her back pain worsened in the summer of 2019, as he specifically mentioned that fact in the hearing decision. However, the ALJ also discussed Plaintiff's medical records that revealed Plaintiff's reports to her medical providers in 2019 and early 2020 that she was able to live alone and perform all activities of daily living independently, did not require an assistive device to ambulate, and experienced limited pain relief with the steroid injections. While Plaintiff may indeed have an injury in her back and experience some degree of pain, the medical evidence indicates that her condition is not of a disabling nature. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

Regarding Plaintiff's mental functioning, the record showed Plaintiff sought very little treatment for these alleged impairments. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). The ALJ also discussed the evidence that revealed Plaintiff often denied depression and anxiety and consistently was noted to have a normal mood and affect and intact memory. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

24

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity.   Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D.      The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. *Id.*  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox. V. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence).

In determining that Plaintiff maintained the RFC to perform light work with limitations, the ALJ considered the medical assessments of treatment providers, a consultative examiner and non-examining agency medical consultants; Plaintiff's subjective complaints; and her medical records. The ALJ specifically discussed the opinions of Drs. Rosson, Hester, Harrison, Saul, Reid and Jordon. The ALJ articulated the supportability and consistency of each opinion with the record

as a whole and determined the level of persuasiveness. As for the opinion of Dr. Rosson, Plaintiff's primary care physician, who opined Plaintiff could perform less than sedentary work, the ALJ found both the mental and physical medical source statements unpersuasive. After reviewing the record, the Court finds substantial evidence to support the ALJ's determination that Dr. Rosson's assessments were inconsistent with the provider's own treatment notes and the medical records whole. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (finding that if a treating physician's opinion is inconsistent with other substantial evidence, such as physical examinations or claimant's daily activities, the ALJ may discount or disregard the opinion).

The ALJ thoroughly discussed Plaintiff's medical records that consistently reported a heart with regular rhythm and rate; clear lungs to auscultation, bilaterally; the ability to heel and toe walk; full motor strength in all extremities; and normal mood, affect and memory. The ALJ also addressed Plaintiff's activities which included the ability to perform household chores, prepare simple meals, drive, shop, pay bills, and spend time with others. While Plaintiff disagrees with the ALJ's RFC determination, after reviewing the record as a whole, the Court finds Plaintiff failed to meet her burden of showing a more restrictive RFC. *See Perks v. Astrue*, 687 F. 3d 1086, 1092 (8th Cir. 2012) (burden of persuasion to demonstrate RFC and prove disability remains on claimant). The Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### E.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true, and which were supported by the record as a whole. *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the

vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a small products assembly worker and a screwdriver operator. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.   Conclusion:

Based on the foregoing, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of September 2022.

/s/     *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE